Lynn **HELLEBUST, John R. Craft, Kansas Natural Resource Council, and Common Cause of Kansas, Plaintiffs,**

v.

Sam **BROWNBACK, in his official capacity as Secretary of the Kansas State Board of Agriculture, and Jay Armstrong, Victor Krainbill, Alvin Epler, Altis Ferree, Thayne Larson, Ralph H. Rindt, F.E. Bliss, Lois Schlickau, Floyd O. Coen, Bob L. Moore, Anne Marie Worley, and Art Howell in their official capacities as members of the Kansas Board of Agriculture, Defendants.**

Civ. A. No. 92–2374–JWL.

United States District Court,
D. Kansas.

April 27, 1993.

Donn J. Everett, Everett, Seaton, Miller & Bell, Manhattan, KS, William J. Craven, Lecompton, KS, for plaintiffs.

David D. Plinsky, Office of the Atty. Gen., Topeka, KS, for defendants.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

### I. Introduction

Because the Kansas State Board of Agriculture exercises general governmental powers which affect the lives of all Kansans but its membership is selected by a narrowly limited voting process, I believe that the cases which interpret the equal protection clause of the Fourteenth Amendment to the United States Constitution, as applied to voting rights, dictate that the plaintiffs' motion for summary judgment seeking to declare this system unconstitutional be granted. The preliminary injunction entered on January 13, 1993 restraining the members of the board of agriculture from further conducting elections is hereby continued until final remedies are ordered in this case. 812 F.Supp. 1136. A hearing will be held by this court on June 30, 1993 to determine appropriate remedies required in the event that the Kansas Legislature does not otherwise rectify matters over the next two months.

The court will file a full opinion in this case in the near future, detailing the analysis involved. However, I will briefly address here some of the primary issues. It should clearly be understood that the court has not reached this result out of any personal policy preference or a finding that the incumbent members or their secretary have served less than well in their respective capacities. There is an old adage, "If it's not broke, don't fix it," but that sound practical advice, for better or for worse, is not a principle of constitutional law, and it is the Constitution of the United States, as interpreted by courts for a generation, that, although others may disagree, I believe requires this outcome.

### II. Facts

The court starts from the premise that policy choices of the duly elected representatives of the people of Kansas should not lightly be put aside and, indeed, are entitled to almost presumptive deference. It is only when the facts establish that such a statutory scheme is one which the Constitution forbids that those legislative policy choices must give way in a court challenge. Because there is no case to which the court was cited or which its own research has uncovered that shares the particular salient characteristics of this one, it is especially important to examine here the facts which appear to be critical in light of the law as developed by the Supreme Court of the United States. The court takes judicial notice of these facts which are set out in the Kansas Statutes Annotated, and, as such, are not disputed.

The delegates from various agricultural organizations throughout the state are sent to the Kansas State Board of Agriculture's annual meeting. These delegates elect the twelve members of the Board at those annual meetings, although, generally, a minority of the board members are elected each year. The members of the board, in turn, elect the Secretary of the Board of Agriculture. This system of election is not intended to give all Kansans an equal vote in selecting the members of the Board of Agriculture.

The current Secretary is Sam Brownback, and the members of the Board are Jay Armstrong, Victor Krainbill, Alvin Epler, Altis Ferree, Thayne Larson, Ralph H. Rindt, F.E. Bliss, Lois Schlickau, Floyd O. Coen, Bob L. Moore, Anne Marie Worley, and Art Howell. The Secretary and the Board members are all defendants in this lawsuit.

The plaintiffs in this suit, which was filed late last year, are Lynn Hellebust and John Craft, residents of Kansas and the Kansas Natural Resource Council and Common Cause of Kansas. On January 13th of this year, the scheduled date of the Board's annual election, this court granted the plaintiffs' request for a preliminary injunction which barred the Board from holding any elections until this matter could permanently be determined.

The Kansas State Board of Agriculture is not simply an agricultural promotion or marketing agency or an entity which deals with matters disproportionately affecting those who elect it. The Board has broad regulatory powers which affect all residents of Kansas daily.

For example, a role in regulation of the healthfulness of milk and meat sold in grocery stores is assigned to the Board. All the

milk sold in this state must pass inspection by the State Dairy Commissioner, who is appointed by the Kansas State Board of Agriculture. If anyone tries to sell a resident of Kansas any mislabelled, unclean, or adulterated dairy product, it is the State Dairy Commissioner's duty to find that product and seize it. The Dairy Commissioner has the authority to enter any business premises, including the neighborhood grocery store, during regular hours and conduct an inspection of dairy products on the premises. The Commissioner may also issue subpoenas for the appearance of witnesses and production of documents in order to carry out his or her duties.[1]

No one can buy any meat which is produced in Kansas unless it is first inspected by the Board of Agriculture. The Board sets all the standards for inspection such as sanitation. The Secretary is responsible to conduct those inspections to make sure that meat produced in Kansas is healthy and fit to eat.[2]

In another context, the Board fills a general regulatory role with regard to weights and measures, and not just those used in agriculture. Any commercial pump or scale used in Kansas, such as the ones used to fill cars with gasoline at the local filling station is subject to inspection by the Board of Agriculture. The Secretary or his agents have the right to enter any premises or vehicle to inspect any commercial measuring devices they may contain. If anyone interferes with an agent of the Board of Agriculture who wants to enter a premises to inspect a scale or pump, that person may be charged with a Class A Misdemeanor.[3]

The Secretary of the Board of Agriculture regulates the application of pesticides in this state. Anyone who applies pesticides commercially in Kansas, whether that person applies them to farm fields or suburban lawns, is subject to his regulation. If the Secretary determines that the application of a particular pesticide "poses a serious threat to the public health, safety, and welfare or the natural resources of the state," he may severely restrict the use of that pesticide.[4] The Secretary may also decide whether or not certain pesticides are highly toxic to humans and thus may be subjected to restrictions on their sale and application.[5]

Finally, the Board has significant power over the use and control of water in Kansas. The Chief Engineer of the Division of Water Resources of the Kansas State Board of Agriculture controls who may take water out of rivers, waterways and aquifers throughout the state. His control of water does not merely apply to farmers or agricultural uses but also reaches water rights held by cities, utilities and individuals not connected with agriculture. If he decides that too much water is being used, he can require water users to institute conservation measures. If too much water is being taken out of a particular river or waterway, he can stop anyone from taking water out of it altogether. He also controls any attempt to divert water from Kansas to another state.[6]

The Chief Engineer also regulates the building of dams in this state. All dams and water obstructions throughout the state (except those administered by the federal government) must meet the Chief Engineer's standards whether or not they are related to agriculture. He may enter onto any private property to inspect dams and water obstructions to make sure they comply with his engineering and safety standards.[7]

These examples of the Board's regulatory functions, although significant for the determination of this case, are not exhaustive of the powers of the Board to regulate for the benefit of the health, safety, and welfare of the general public. Suffice it to say, they are basic, general governmental powers.

1. K.S.A. § 75–1401 et seq.

2. K.S.A. § 65–6a18 et seq.

3. K.S.A. § 83–201 et seq.

4. K.S.A. § 2–2438a et seq, 2–2478.

5. K.S.A. § 2–2205(a).

6. K.S.A. § 82a–701.

7. K.S.A. § 82a–301 et seq.

## III. The Law

### A. *Equal Protection*

■ The equal protection clause of the Fourteenth Amendment has consistently been interpreted by the United States Supreme Court for almost thirty years to require "one person, one vote" when electing officials of public entities with general governmental functions.

*Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964) first applied the constitutional requirement of "one person, one vote" to state government. This means that one person's vote cannot be worth less or more than another's and someone who should be able to vote should not be prohibited from voting in a state government election. Any attempts to dilute the value of votes or prohibit eligible voters from voting are subject to strict judicial scrutiny which few hybrid electoral systems are likely to satisfy.

■ The Supreme Court, however, has also provided a narrow exception to the general rule of "one person, one vote" which the court finds does not apply here. In the two leading cases of *Salyer Land Co. v. Tulare Lake Basin Water Storage District,* 410 U.S. 719, 93 S.Ct. 1224, 35 L.Ed.2d 659 (1973) and *Ball v. James,* 451 U.S. 355, 101 S.Ct. 1811, 68 L.Ed.2d 150 (1981), the court held that the general rule of "one person, one vote" does not apply when the government entity meets two requirements: (1) a special limited purpose and (2) the activities of the unit of government have a disproportionate effect on those who may vote for its officials.

In both *Salyer* and *Ball,* the Court determined that special water districts which provided water for irrigation did not need to meet the *Reynolds* "one person, one vote" test. The officials of each water district were not elected by the entire voting population within the district but only by the landowners within it. Each water district had only a special limited purpose: to store, con-

serve, and deliver water to members of the district according to land ownership and without any discretionary control over either its distribution or use. The court determined that these districts had merely a "nominal public character" even though they were established by statute and were more like a business entity than a public entity.[8]

The high court also determined in those cases that the districts' activities disproportionately affected the landowners who elected their officials. These water districts could levy taxes on those landowners but not on others, and take their land by eminent domain. These very landowners who were subject to the powers of the water district were also the only ones who elected its officials.

■ The Kansas State Board of Agriculture is not like the water districts in *Salyer* and *Ball.* First of all, the Board has a general rather than specialized governmental purpose. The Board has suggested that its only purpose is to provide a common forum to conduct marketing activities and disseminate information on agricultural topics. If that were the case, the Board would have a very limited purpose and the *Salyer* and *Ball* exception to "one person, one vote" would apply. But as has been described, the Board's actual broad regulatory powers, many of all of which the Board may not have sought or even desired, are at odds with the Board's narrow description of itself.

As was described earlier, the Board has broad regulatory powers which protect the health, safety, and welfare of the residents of Kansas. They are responsible for insuring the safety and fitness of the meat we eat and the milk we drink. They make sure that dams which hold back the state's waters are sturdy enough to control our waters and prevent floods. They test our gas pumps and grocery scales to make sure that consumers are not being cheated and they decide whether the pesticides which go on farm fields and suburban lawns alike should be applied and how they should be applied. The

---

**8.** In Ball, the plaintiffs also argued that the water district had more than a limited function because it operated a large electrical power utility. However, the presence of the utility did not influence the outcome in the case because the parties had

stipulated that it was merely incidental to the primary purpose of the water district, which was to supply water to its members, and because it was a business function rather than a governmental one.

powers that the Board of Agriculture apply in protecting our health, safety and welfare are commonly called police powers. Exercise of these police powers have traditionally been vital government functions of the state. The Board's regulatory control of water in the state is of particular concern. As the Supreme Court said in *Fort Gratiot Sanitary Landfill, Inc. v. Michigan Dept. of Natural Resources,* —— U.S. ——, 112 S.Ct. 2019, 119 L.Ed.2d 139 (1992), "a state's power to regulate the use of water in times and places of shortage for the purpose of protecting the health of its citizens ... is at the core of its police power." Because the Board is exercising general governmental police powers, the special limited governmental purpose present in *Salyer* and *Ball* is not present here.

The activities of the Kansas State Board of Agriculture, moreover, do not disproportionately affect those who elect it. In *Ball* and *Salyer,* the Supreme Court focused on who bore the burdens of the governmental units. In both cases, the landowners were the ones subject to the districts' power to tax and condemn land. The Kansas State Board of Agriculture differs from *Ball* and *Salyer* in this respect in two ways. First, the burdens of the Board do not disproportionately fall on those participating in agriculture. As described earlier, the Board's regulatory activities affect and protect all residents of the state of Kansas. The second way that the Board does not disproportionately affect those who vote for it is that not all farmers participate in the electoral process. According to the statutes, only representatives of certain agricultural organizations and individuals who comply with a complicated procedure which involves obtaining a petition with the signatures of one hundred farmers who are not affiliated with an agricultural organization may send delegates to the annual meeting to elect board members. This system for deciding who may vote in the Board's

annual meeting surely does not represent all members of Kansas' agricultural community.

Because the *Ball* and *Salyer* exception does not apply, the Kansas State Board of Agriculture is subject to the general rule of *Reynolds v. Sims.*[9] According to Reynolds, unless the state can show a compelling state interest for its present system of election, all voters in Kansas must have an equal opportunity to determine who will be the members of the Board and the Secretary. Whatever system is finally devised to meet that requirement, each person's vote must not have more weight than another's.[10]

### B. *Standing*

■ The court recognizes as a threshold matter that these plaintiffs must have standing in order to bring this lawsuit. Mr. Hellebust and Mr. Craft are residents of Kansas who do not belong to any of the enfranchised farm organizations. At least these two plaintiffs do have standing to bring this suit because their claim meets the three requirements for standing as set out by the Supreme Court in *Lujan v. Defenders of Wildlife,* —— U.S. ——, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992): injury in fact, causation, and redressability. They claim to have been injured in fact by the Board and the Secretary who administered an unconstitutional election and were unconstitutionally elected themselves. The plaintiffs claim that the defendants in this action caused their injury by acting in a governmental capacity over them even though they were not constitutionally selected. Finally, the plaintiffs contend that this court may redress their injury by declaratory judgment and injunction. This court agrees. Moreover, the Supreme Court has given broad standing to those who challenge obstacles to their right to vote. *See Gray v. Sanders,* 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963).

**9.** The defendants have also argued that the case *Holt Civic Club v. Tuscaloosa,* 439 U.S. 60, 99 S.Ct. 383, 58 L.Ed.2d 292 (1978) supports their position that the rule of "one person, one vote" does not apply. The court has considered this opinion and found it entirely distinguishable. This matter will be dealt with more fully in the final written opinion in this case.

**10.** Even if the *Ball* and *Salyer* exception applied to the Board of Agriculture, the method of election would still have to meet a rational basis test. As will be set out in detail in the full written opinion to be issued later, the present method of election does not meet rational basis requirements.

### C. *Miscellaneous*

The court has considered the other arguments which the plaintiffs and defendants have made in their pleadings. These arguments will be addressed in the later full written opinion rather than here because they are not determinative of any of the matters before the court.

### IV. Order

For the reasons that I have already stated and will be described in greater detail in the full written order to follow,

**IT IS THEREFORE ORDERED BY THE COURT** that Kansas Statutes Annotated §§ 74–502 & 503 (1992) setting forth the method to elect members and the Secretary of the Kansas State Board of Agriculture as that body is constituted and empowered are hereby declared to violate the Equal Protection Clause of the Fourteenth Amendment of the Constitution of the United States of America.

**IT IS FURTHER ORDERED BY THE COURT** that the preliminary injunction issued by this court on January 13, 1993 enjoining the defendants, their officers, agents, servants, employees and attorneys and all other persons in active concert and participation with the defendants from conducting the elections required by Kansas Statutes Annotated § 74–503 shall continue until this court shall issue a final opinion on the issue of appropriate remedies.

**IT IS FURTHER ORDERED BY THE COURT** that a hearing on the issue of appropriate remedies in this matter will be held on June 30, 1993 at 2:00 p.m.

**IT IS FURTHER ORDERED BY THE COURT** that the plaintiffs may submit a brief on the issue of remedies by May 28, 1993. The defendant may then respond to the plaintiffs' brief by June 21, 1993. The defendants may reply by June 28, 1993. Service shall be made on counsel for the opposing parties by fax or hand delivery and not by mail. In addition to filings made with the clerk, two copies of each of these briefs shall be delivered directly to the court.